# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TANNER W. BRUEGGE, <br><br> Plaintiff, <br><br> vs. <br><br> CALEB REISS, <br><br> Defendant. | No. C23-3052-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This case is before me on a motion (Doc. 18) for summary judgment filed by defendant Caleb Reiss. In support, Reiss filed a brief (Doc. 18-1), a statement of material facts (Doc. 18-2) and an appendix (Doc. 18-3). Plaintiff Tanner Bruegge did not file a resistance and the time for doing so has expired. Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

On December 4, 2023, Bruegge commenced this action by filing a 42 U.S.C. § 1983 complaint (Doc. 1) and a motion (Doc. 2) to proceed in forma pauperis. He filed his complaint in the Southern District of Iowa, which then transferred the case to this court. Doc. 3. Bruegge also filed a motion (Doc. 5) to appoint counsel and several supplements (Docs. 6-8). On September 23, 2024, I granted his motion (Doc. 2) to proceed in forma pauperis, granted him 30 days to file an amended complaint and denied his motion (Doc. 5) to appoint counsel. Doc. 9. On October 23, 2024, Bruegge filed an amended complaint (Doc. 10), suing the State of Iowa in its official capacity and Officer Caleb Reiss in his individual capacity for failing to protect him from another inmate while he was incarcerated at the North Central Correctional Facility (NCCF). On November

1, 2024, I allowed Bruegge's failure to protect claim against Reiss to proceed but dismissed the State of Iowa from this case. Doc. 12.

Reiss filed his answer (Doc. 14) on December 2, 2024. A scheduling order (Doc. 15) set April 14, 2025, as the deadline for dispositive motions. Bruegge filed another pro se motion (Doc. 16) to appoint counsel, which I denied. Doc. 17. On April 14, 2025, Reiss filed his motion (Doc. 18) for summary judgment. On June 24, 2025, Bruegge filed a pro se motion (Doc. 19) for an extension of time to file his response. I granted that motion and extended the deadline to July 24, 2025. Doc. 20. No resistance was filed.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475

U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. RELEVANT FACTS

Reiss filed a statement of material facts (Doc. 18-2) setting forth the alleged facts he relies on to seek summary judgment. Bruegge did not respond to Reiss' statement of material facts, nor did he file a statement of additional material facts. Pursuant to Local Rule 56(b), all facts set forth in Reiss' statement of material facts are deemed admitted for purposes of his motion for summary judgment. *See* LR 56(b) ("The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact."); *see also* Fed. R. Civ. P. 56(e). Those undisputed facts are summarized below.

Bruegge was incarcerated at the NCCF, a minimum-security facility, from August 22, 2023, until July 8, 2024. Doc. 18-2 at 1, ¶ 2. On October 21, 2023, Bruegge and inmate LeRoy Johnson were housed in Room 10 on Living Unit D South, along with eight other inmates. *Id.* at 2-3, ¶ 7. Reiss was a correctional officer assigned to Living Unit D South. *Id.* at 1, 2, ¶¶ 3, 5. Reiss was familiar with Bruegge and Johnson and had never had any problems with either inmate. *Id.* at 3, ¶ 7. At approximately 6:15 pm, Bruegge and another inmate reported to Reiss that Johnson had come into Room 10 and yelled at them. *Id.* at 3, ¶ 8. They were worried that there would be an issue in their room. *Id.*

Reiss requested additional officers come to Living Unit D South. *Id.* at 3, ¶ 9. He and Correctional Officer Jacob Dick then found Johnson and brought him to a private and secure office to talk. *Id.* During their conversation, Johnson was cooperative but appeared upset. *Id.* Johnson told them that he believed someone in Room 10 had inappropriately touched him while he was sleeping but he was unsure who it was. *Id.* Reiss concluded that Johnson needed to talk to the officer-in-charge, Captain Katie Rotert. *Id.* Reiss and Dick escorted Johnson to another building in order for him to speak with Rotert in the Security Office. *Id.* at 3-4, ¶ 10. Johnson shared his concerns with Rotert but told her that he felt safe and did not want to check into Protective Custody. *Id.* at 4, ¶ 11. He signed a waiver of Rotert's offer of Protective Custody. *Id.* When

4

Rotert asked Johnson if he intended to harm anyone, Johnson replied that he did not intend to harm himself or anyone else. *Id.*

Rotert allowed Johnson to leave the Security Office and go to the 7:00 pm pill line unescorted. *Id.* at 4, ¶ 12. At approximately 7:15 pm, Rotert instructed Reiss to find Johnson and check him into Protective Custody, and Reiss immediately left to go to Living Unit D South to find Johnson. *Id.* at 4, ¶ 13; Doc. 18-3 at 9. A Disciplinary Notice states that camera footage shows Johnson entered Room 10 at 7:15:50 pm and assaulted Bruegge, who had injuries to his nose and ear. Doc. 18-3 at 9. The Notice states that Reiss entered Room 10 at 7:17:59 pm and found Johnson. *Id.* Reiss then escorted Johnson to the Protective Custody Unit. Doc. 18-2 at 4, ¶ 13. Later, Reiss learned that Johnson had attacked Bruegge. *Id.* Johnson received a disciplinary report and was sanctioned for the assault. *Id.* at 4, ¶ 14; Doc. 18-3 at 10-11. Bruegge was treated at the Unity Point Emergency Room for his injuries. Doc. 18-3 at 9.

Bruegge attached to his amended complaint an initial grievance, assigned Grievance No. 63127, that he filed on October 22, 2023. Doc. 10 at 13. That grievance states that "Johnson came into the room closed the door then attacked me. I had previous[]ly told a[n] officer he was being hostile to me and they took him to health services then security office then let him go and that's when he attacked me." *Id.* He further stated that "Johnson never was removed from the room after I told the C.O. that he was threat[e]ning me." *Id.* Bruegge stated that that initial grievance was returned to him not processed. Doc. 18-3 at 21.

On October 29, 2023, Bruegge filed his grievance a second time, also labeled Grievance No. 63127, stating that Johnson had attacked him and that prior to the attack Bruegge "had tried to resolve the issue." *Id.* at 20. He requested that Reiss and Rotert "and anyone else that was in the security office need [to be] spoken to about what happened so it doesn't happen again." *Id.* He supplemented his grievance, noting that "I tried to resolve the issue by telling C.O. Reiss letting him know that Leroy Johnson was being hostile, trying to fight me and others . . . The C.O.'s took Leroy to Health

5

Services then to the Security Office and he was rele[a]sed back to G.P. and he came straight back to the room and attacked me after I told the Guards that he was being hostile and trying to fight me." *Id.* at 21. His grievance was denied. *Id.* at 14, 25.

The Iowa Department of Corrections (IDOC) has a grievance policy that included an appeal procedure to the Warden and the Deputy Director of Institution Operations. *Id.* at 32-33; Doc. 18-2 at 5, ¶ 16. The procedure provides that "[t]he grievant may appeal the initial response of the Grievance Officer in writing . . . and the appeal must be received by the Warden within 15 days of the date of the Grievance Officer's response." Doc. 18-3 at 33. Further, "[t]he grievant may appeal the Warden's/Designee's response in writing and the appeal must be postmarked by the Deputy Director of Institution Operations within 15 days of the date of the Warden's/Designee's response." *Id.* Abigail Williams, the acting Central Office Grievance Officer for the IDOC, submitted an affidavit stating that Bruegge did not submit an appeal to the Warden or to the Central Office for his grievance. *Id.* at 12-13. Thus, Bruegge did not utilize all the available administrative remedies prior to filing suit. Doc. 18-2 at 5, ¶ 15.

## V. ANALYSIS

Under LR 56(c), "[i]f no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court." Because Bruegge did not file a resistance, Reiss' motion could be granted for that reason alone. Nonetheless, I will undertake an analysis of Reiss' arguments as to the merits of Bruegge's claim. Reiss contends that summary judgment is appropriate because there is no genuine issue of material fact as to whether there is a viable failure to protect claim, Bruegge failed to exhaust available administrative remedies and Reiss is entitled to qualified immunity.

6

## A. Failure to Protect

Reiss contends Bruegge is unable to demonstrate that Reiss violated Bruegge's right by failing to protect him from Johnson and thus Reiss is entitled to judgement as a matter of law. *See* Doc. 18-1 at 3-4. Reiss argues that "there is no evidence that the Defendant knew of any problem between Plaintiff and inmate Johnson prior to Johnson attacking Bruegge on October 21, 2023." *Id*. at 4. Reiss concedes that "Bruegge reported to Reiss that Johnson had yelled at him approximately one hour before Johnson attacked Bruegge" but asserts that Johnson "was only trying to talk to his roommates to try to determine who" had touched him while he was sleeping. *Id*. Reiss argues that he took Johnson to Rotert "so that the Captain could better assess the situation" and "[i]t was not Reiss's decision" to allow Johnson to go to the pill line unescorted. *Id*. Moreover, Reiss argues that Rotert's decision to do so "was reasonable at the time." *Id.*

The Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Although prison officials have an Eighth Amendment obligation to "take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners," they are not liable "every time one inmate attacks another." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018); *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). A prison official violates the Eighth Amendment when he acts with deliberate indifference to a substantial risk of harm to the inmate. *Id*. at 834. To state a failure-to-protect claim, a plaintiff is required to allege that (1) defendants were aware of facts from which they could infer the existence of a substantial risk of serious harm to him, (2) they actually drew the inference, and (3) they failed to take reasonable steps to protect him. *Schofield v. Hopkins*, 491 F. App'x 772, 774 (8th Cir. 2012).

An inmate "must show something more than mere inadvertence or negligence. He must show the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow

7

inmates."[1] *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991) (citation omitted); *see also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (en banc) (A prison official can only be found to be deliberately indifferent if he "knows of and disregards" a substantial risk to an inmate's safety.). Negligence on the part of a defendant is not sufficient to establish that he acted with deliberate indifference. *See Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). The Eighth Circuit has noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). In addition, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Prater*, 89 F.3d at 541 (8th Cir. 1996) ("the duty to protect requires only that prison officials 'take reasonable measures to abate substantial risks of serious harm, of which the officials are aware.'") (*quoting Reece v. Groose,* 60 F.3d 487, 491 (8th Cir.1995)).

Here, the record contains no evidence that Reiss' conduct amounted to criminal recklessness. Even assuming Johnson posed a substantial risk of serious harm to Bruegge, the record establishes that Reiss did not deliberately disregard Bruegge's concerns about Johnson after he notified Reiss that Johnson had yelled at him. Rather, as a reasonable measure in response to Bruegge's concerns, Reiss escorted Johnson to meet with the officer-in-charge in order for that officer to talk to Johnson, address the situation and assess any risk. *See Schofield*, 491 F. App'x at 774 (affirming dismissal of failure-to-protect claim against defendant who knew of the threat but "took reasonable steps to abate it" by reporting the threat to a supervisor); *Norman v. Schuetzle*, 585 F.3d 1097, 1107 (8th Cir. 2009) *overruled on other grounds by Pearson v. Callahan*, 555 U.S.

---

[1] The deliberate indifference standard applies to both pre-trial detainees and inmates. The Eighth Circuit has applied that standard to pre-trial detainees' failure to protect claims. *See, e.g., Hott v. Hennepin County,* 260 F.3d 901, 906–07 (8th Cir. 2001).

8

223 (2009) (no failure-to-protect violation where prison official with knowledge of threats against inmate informed supervisor and noted threats in logbook); *Reed v. Shipman*, No. 4:23-CV-584, 2023 WL 8430627, at *2 (E.D. Ark. Nov. 13, 2023), *report and recommendation adopted,* 2023 WL 8371949 (E.D. Ark. Dec. 4, 2023) ("Lieutenant McDowell took reasonable measures to abate that risk by reporting the incident to Major MaHoney."). During the meeting, Johnson did not threaten Bruegge or otherwise signal that he would be violent towards Bruegge. To the contrary, he indicated that he did not intend to harm anyone. Rotert, not Reiss, decided to let Johnson leave the security office unattended, and Bruegge has not shown that Reiss had any reason (or ability) to challenge that decision by the officer in charge.

In sum, Bruegge has not demonstrated that there is a genuine issue of fact that Reiss' actions met the subjective prong required for deliberate indifference. Nothing in the record would permit a reasonable jury to find that Reiss knew of an excessive risk to Bruegge but disregarded that risk. Therefore, Reiss is entitled to summary judgment on Bruegge's failure-to-protect claim.

## B. *Qualified Immunity*

Reiss contends, alternatively, that he is entitled to qualified immunity "because his actions were objectively and subjectively reasonable." Doc. 18-1 at 8. Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Davis v. Hall*, 375 F.3d 703, 711-12 (8th Cir. 2004). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). To determine whether a

9

defendant is entitled to qualified immunity, courts ask (1) whether the facts alleged or shown establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, a defendant is entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir. 2013).

Because qualified immunity was raised as a defense at the summary judgment stage, Bruegge must produce evidence to create a genuine issue of fact regarding whether Reiss violated "clearly established" law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997). Bruegge does not identify any caselaw governing this set of facts. Thus, even if Bruegge could establish Reiss violated his constitutional rights, Bruegge has not met his burden of identifying authority establishing that Reiss' actions were prohibited. The record does not establish that it would have been clear to a reasonable person that Reiss' conduct was unlawful. Because Bruegge cannot establish either a constitutional violation or that a right was clearly established, Reiss is entitled to qualified immunity. Qualified immunity thus provides an additional, alternative basis for the entry of summary judgment in favor of Reiss in his individual capacity.[2]

## VI. CONCLUSION

For the reasons set forth herein, defendant's motion (Doc. 18) for summary judgment is **granted**. Judgment **shall enter** in favor of defendant Caleb Reiss and against plaintiff Tanner Bruegge. Because this order disposes of all claims, the Clerk of Court shall **close this case**.

---

[2] As noted above, Reiss also asserts that Bruegge's claim is barred because he failed to fully exhaust the administrative remedies provided within the IDOC grievance procedure. Doc. 18-1 at 4-6. Because Bruegge's failure to protect claim fails on its merits for the reasons set out above, I need not consider this additional argument.

10

**IT IS SO ORDERED** this 20th day of October, 2025.

_____
Leonard T. Strand
United States District Judge